UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No.

| | |
|---|---|
| PADRES LATINOS DE LAS ESCUELAS DE SPRINGFIELD Y HOLYOKE (PLESH),<br><br>　　　　　　Plaintiff<br><br>　　　　　v.<br><br>MASSACHUSETTS DEPARTMENT OF ELEMENTARY & SECONDARY EDUCATION; MASSACHUSETTS BOARD OF ELEMENTARY & SECONDARY EDUCATION; JEFFREY WULFSON, Acting Commissioner of Massachusetts Department of Elementary & Secondary Education; STEPHEN ZRIKE, JR., Receiver and Superintendent of Holyoke Public Schools; MARIANNE CURRIER, Chief of Pupil Services, Holyoke Public Schools; ALESSANDRA SMITH, Special Education Coordinator of Student Support Services, Holyoke Public Schools; DANA BROWN, Interim Principal, Holyoke High; JEFFREY PETERSON, Principal, William J. Dean Technical High School; MARC SWYGERT, Principal, Maurice A. Donahue School; ISAMAR VARGAS, Principal, Dr. Marcella R. Kelly Full Service Community School; CATHERINE HOURIHAN, Principal, H.B. Lawrence School; NOREEN EWICK, Principal, Lt. Elmer J. McMahon School; AMY BURKE, Principal, Joseph Metcalf School; ALYSON LINGSCH, Principal, William G. Morgan School; KENDRA SALVADOR, Principal, William R. Peck School; JOHN BREISH, Principal, Lt. Clayre Sullivan School; JACQUELINE GLASHEEN, Principal, E.N. White School; and the CITY OF HOLYOKE, MASSACHUSETTS,<br><br>　　　　　　Defendants | **VERIFIED COMPLAINT** |

## INTRODUCTION

1. This action challenges long-standing discriminatory policies, procedures and actions of the Holyoke Public School system ("HPS") that deny limited English proficient ("LEP") parents and guardians (hereinafter "Parents") adequate translation and interpretation of educational documents and communications, both written and oral, in violation of federal statute and constitutional guarantees.  For more than two decades, HPS, acting with either state educational officials' tacit approval or deliberately indifferent oversight, disregarded and intentionally ignored legal obligations to LEP Parents of students enrolled in HPS.  This pattern of wrongful conduct, which continues under the Commonwealth's current receivership, leaves Parents of vulnerable students, including those with disabilities, in the dark as to what educational alternatives are available for their children.  Moreover, the Commonwealth has failed, and continues to fail, despite repeated investigations, to hold HPS accountable, as it must under federal law.  As a result, thousands of children have been injured and their Parents have been denied their right to receive communications regarding educational programming in a language that they can understand so that they may participate in the education of their children to the same extent as their English-speaking counterparts.

## PARTIES

2. Plaintiff Padres Latinos de las Escuelas de Springfield y Holyoke ("PLESH") is an unincorporated association of Latino/a Parents of students enrolled in western Massachusetts schools working together to improve educational outcomes for their children.  PLESH's mission is "organizing for the purpose of ensuring that our children receive the complete education to which they are entitled and access to educational opportunities available to all other children.  To that end, we seek to eliminate barriers to our full participation in planning for the education of our children, including specifically language barriers."  PLESH includes in its membership

LEP Parents of students enrolled in HPS. They were denied both: (1) adequate translation of educational documents; and (2) oral interpretation by properly trained interpreters.  PLESH members have received and continue to receive written educational communications, including communications required by law, in English, even when school officials know that Spanish is their primary language.  PLESH members also attend school meetings where they do not understand what is being discussed.

3. Defendant Massachusetts Department of Elementary & Secondary Education ("DESE") is an agency of the Commonwealth of Massachusetts established within the executive office of education pursuant to Mass. Gen. Laws ch. 6A, § 14A and Mass. Gen. Laws ch. 69, § 1A, with a principal place of business located at 75 Pleasant Street, Malden, MA 02148.  It was previously known as the Department of Education.

4. Defendant Massachusetts Board of Elementary & Secondary Education ("Board") is an agency of the Commonwealth of Massachusetts established within the Department of Elementary & Secondary Education pursuant to Mass. Gen. Laws ch. 15, § 1E, with a principal place of business located at 75 Pleasant Street, Malden, MA 02148.  Pursuant to Mass. Gen. Laws ch. 69, § 1B, Defendant Board is the state education agency for purposes of federal law.

5. Jeffrey Wulfson is the Acting Commissioner of Massachusetts Department of Elementary and Secondary Education ("Commissioner") who oversees DESE pursuant to Mass. Gen. Laws ch. 69, § 1A and has offices located at 75 Pleasant Street, Malden, MA 02148.  The Commissioner's duties include: (a) overseeing and monitoring development and implementation of English language learners programs established under Mass. Gen. Laws ch. 71A; (b) monitoring the implementation of independent evaluations of students with disabilities and assessing the effectiveness of special education programs developed by school districts

pursuant to Mass. Gen. Laws ch. 71B; (c) supervising and monitoring on an on-going basis the compliance of school districts with the provisions of Mass. Gen. Laws ch. 71A and 71B; and (d) supervising any receiver of a school district appointed under Mass. Gen. Laws ch. 69, § 1K, including jointly creating a turnaround plan with any such receiver to promote the rapid improvement of a chronically underperforming district.  In addition, pursuant to Mass. Gen. Laws ch. 15, § 1F, Defendant Board may delegate its authority or any portion thereof to the Commissioner whenever in its judgment such delegation may be necessary or desirable, and upon any such delegation, the Commissioner shall exercise the delegated powers and duties with the full authority of the Board.

6. Defendants DESE, Board, and Commissioner (hereinafter collectively referred to as "DESE" unless otherwise specified) are charged pursuant to Mass. Gen. Laws ch. 15 and 69 with, among other things, implementing and enforcing federal and state educational laws and policies, including without limitation, education of all Massachusetts elementary and secondary students without regard to disability or language barriers.

7. Defendant Dr. Stephen Zrike, Jr., Receiver and Superintendent of HPS ("Receiver Zrike"), is the current Receiver and Superintendent of HPS, appointed by DESE, with an office located at 57 Suffolk Street, Holyoke, MA 01040.  Receiver Zrike began his service as Receiver on July 6, 2015 pursuant to Mass. Gen. Laws ch. 69, § 1K.  Receiver Zrike's duties include, among other things, creation (jointly with former Commissioner Chester) and implementation of a turnaround plan to promote the rapid improvement of HPS and ensure its legal obligations to students and parents.

8. Defendants Marianne Currier, Chief of Pupil Services for HPS ("Ms. Currier"); Alessandra Smith, Special Education Coordinator of Student Support Services for HPS (Ms.

Smith"); Dana Brown, Interim Principal, Holyoke High ("Mr. Brown"); Jeffrey Peterson, Principal, William J. Dean Technical High School ("Mr. Peterson"); Marc Swygert, Principal, Maurice A. Donahue School ("Mr. Swygert"); Isamar Vargas, Principal, Dr. Marcella R. Kelly Full Service Community School ("Ms. Vargas"); Catherine Hourihan, Principal, H.B. Lawrence School ("Ms. Hourihan"); Noreen Ewick, Principal, Lt. Elmer J. McMahon School ("Ms. Ewick"); Amy Burke, Principal, Joseph Metcalf School ("Ms. Burke"); Alyson Lingsch, Principal, William G. Morgan School ("Ms. Lingsch"); Kendra Salvador, Principal, William R. Peck School ("Ms. Salvador"); John Breish, Principal, Lt. Clayre Sullivan School ("Mr. Breish"); and Jacqueline Glasheen, Principal, E.N. White School ("Ms. Glasheen") are employees of HPS responsible for, among other things, communications with Parents and overseeing implementation of school policies and practices, including those related to compliance with HPS nondiscrimination, translation and interpretation policies. This action is against them solely in their official capacities.

9. Defendant City of Holyoke, Massachusetts ("Holyoke") is a municipal corporation with offices located at City Hall, 536 Dwight Street, Holyoke, MA 01040, which was responsible for HPS prior to the Board's vote to place HPS into receivership, and will be responsible for HPS at the conclusion of the receivership.

10. Defendants DESE, Holyoke and Receiver Zrike all receive federal funds for educational purposes from, among other sources, the United States Department of Education ("DOE").

## JURISDICTION

11. This is an action to redress deprivations of statutory and constitutional rights, the latter arising under the Fourteenth Amendment of the United States Constitution (the "Fourteenth Amendment"), as secured by 42 U.S.C. § 1983.

12. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (claims asserted under the laws of the United States), and 28 U.S.C. § 1343(a) (claims asserted under laws providing for equal rights). As a recipient of federal financial assistance, DESE is subject to suit in this Court pursuant to 42 U.S.C. § 2000d-7(a).

13. The claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202.

14. The claim for attorneys' fees is authorized by 42 U.S.C. § 1988.

15. The claims for denial of equal educational opportunities by a state or municipality pursuant to 20 U.S.C. §§ 1703 and 1706 are properly brought in the district court of the United States.

16. Venue in this district is proper under 28 U.S.C. § 1391(b).

## BACKGROUND

17. The right of parents to direct and participate in the education plans of their minor children is embedded in statute and regulation, as well as founded on liberty and privacy interests protected by the due process clause of the Fourteenth Amendment, as recognized by the United States Supreme Court.

18. For more than five decades, the U.S. Congress enforced these constitutional principles through statutes and regulations which require state and local educational agencies that receive federal funds to ensure that LEP Parents have access to and participation in their children's educational programs to the same extent as English-speaking parents. This equal

access requirement specifically includes the provision of written translation and oral interpretation of educational documents and communications.

19. For example, the Civil Rights Act of 1964 ensures that "[n]o person in the United States shall, on the ground of … national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d ("Title VI").

20. Accordingly, 34 C.F.R. § 100.5 prohibits discrimination under programs receiving federal assistance through the DOE and states that "discrimination by the recipient school district in any of its elementary or secondary schools in the admission of students, or in the treatment of its students in any aspect of the educational process, is prohibited." *Id*. at ¶ (a).

21. In 1970, the United States Department of Health, Education and Welfare ("HEW") recognized that Title VI requires that "[s]chool districts have the responsibility to adequately notify national origin-minority group parents of the school activities which are called to the attention of other Parents."[1] In addition, "[s]uch notice in order to be adequate may have to be provided in a language other than English."[2]

22. Further, in 1974 Congress passed the Equal Education Opportunities Act ("EEOA") declaring "it to be the policy of the United States that … all children enrolled in public schools are entitled to equal educational opportunity without regard to … national origin…." 20 U.S.C. § 1701(a).

23. The EEOA provides that "[n]o State shall deny equal educational opportunity to an individual on account of his or her race, color, sex, or national origin, by . . . (f) the failure by

---

[1] May 25, 1970 Memorandum to School Districts With More Than Five Percent National Origin-Minority Group Children from J. Stanley Pottinger, Director, Office of Civil Rights, HEW regarding Identification of Discrimination and Denial of Services on the Basis of National Origin. 35 Fed. Reg. 11595-96 (July 18, 1970).
[2] *Id*.

an educational agency to take appropriate action to overcome language barriers that impede equal participation by its students in its instructional programs." 20 U.S.C. § 1703.[3]

24. The Elementary and Secondary Education Act of 1965, as amended ("ESEA"), 20 U.S.C. § 6312, requires local educational agencies to involve parents meaningfully in their children's education as a condition of federal funding. ESEA implementing regulations require schools to communicate "in a language that parents can understand." *See* 34 C.F.R. § 200.36, § 200.8, § 200.27, § 200.47, § 200.51, and § 200.61.

25. The Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415, also provides that both the state and local educational agencies receiving federal funds adopt procedures designed to ensure that required notices and communications are in the native language of the parents.

26. IDEA implementing regulations require schools to keep a parent "fully informed of all information relevant to the activity for which consent is sought, in his or her native language." 34 C.F.R. § 300.9. Further, schools "must take whatever action is necessary to ensure that the parent understands the proceedings of the IEP [Individualized Education Plan] Team meeting, including arranging for an interpreter for parents … whose native language is other than English." 34 C.F.R. § 300.322(e).[4]

---

[3] Pursuant to 20 U.S.C. § 1720(a), the term "educational agency" means a local educational agency and/or a "State educational agency" as defined by the Elementary and Secondary Education Act of 1965.

[4] *See* 71 Fed. Reg. 46539, 46679 (Aug. 14, 2006) (specifically retaining the affirmative requirement to provide language access in the 2006 rulemaking because "not all stakeholders are aware of the applicability of those other protections in IEP Team meetings" arising from "other Federal laws that require public agencies to take appropriate measures to ensure that parents understand the proceedings at an IEP Team meeting"). Moreover, 34 C.F.R. § 300.503 specifically identifies procedural safeguards of interpretation and translation for non-English speaking parents and parents whose mode of communication does not include a written language as required by "other Federal statutes to … ensure that parents who themselves have disabilities and limited English proficient parents understand proceedings at any of the meetings described in this section [Subpart E]." 71 Fed. Reg. 46539, 46688-89 (Aug. 14, 2006).

27. The DOE and the United States Department of Justice ("DOJ") have consistently held that federal law requires LEP parents be notified and included in their children's education to the same extent as English-speaking parents through, among other things, communications with school personnel in a language these parents can understand.

28. The most recent, and current, guidance on the subject is found in a "Dear Colleague" letter published by the DOJ Civil Rights Division and the DOE, Office for Civil Rights dated January 7, 2015 ("2015 Guidance"). Among the topics included in the 2015 Guidance is the "[f]ederal obligation to ensure that LEP parents and guardians have meaningful access to district and school-related information" (at p. 2).

29. The 2015 Guidance indicates that it is a violation of federal law to: "(1) rely on students, siblings, friends, or untrained school staff to translate or interpret for parents; (2) fail to provide translation or an interpreter at IEP meetings, parent-teacher conferences, enrollment or career fairs, or disciplinary proceedings; (3) fail to provide information notifying LEP parents about a school's programs, services, and activities in a language the parents can understand; [and] (4) fail to identify LEP parents." *Id*. at 39.[5]

30. In sum total, federal constitutional and statutory law reflects the judgment that Parents are necessary participants in their children's educational programs, that Parents and children are harmed when Parents are precluded because of language barriers from participating in their children's educational programs in collaboration with school staff, and that schools therefore must provide adequate translation and interpretation services such to allow such full participation.

---

[5] In addition, pursuant to the 2015 Guidance, "[s]chool districts must develop and implement a process for determining whether parents are LEP and what their language needs are" and "SEAs [State educational agencies] and school districts must provide language assistance to LEP parents effectively with appropriate, competent staff – or appropriate and competent outside resources." (p. 38)

**Unlawful Discrimination**

31.     In the HPS district, according to DESE, 79.5 percent of the student body is Hispanic, 43.8 percent of all students are designated "first language not English" (compared to a statewide average of 20.1 percent), and 23.3 percent are identified as students with disabilities (compared to a statewide average of 17.4 percent). Almost 20,000 Latinos/as reside in Holyoke (almost 50% of the population), with over 92 percent of them identifying as Puerto Rican.

32.     For at least two decades, HPS has routinely and repeatedly failed translate important educational documents and communications to LEP Parents. This includes notices of meetings, evaluations, proposed individual education plans ("IEPs"), final IEPs, disciplinary notices, student and parent handbooks, anti-bullying information, notices of events, authorizations for release of information, health plans, nursing materials, documents related to extracurricular activities, progress reports, special education documents, and other routine communications. HPS also failed to provide trained interpreters for meetings between Parents and school officials, including critical meetings to discuss and formulate IEPs.

33.     These failures were reported as early as 1996 to Massachusetts and HPS officials that have a duty to implement, enforce, monitor and supervise compliance with pertinent federal and state educational laws and policies, and have continued persistently since then.

34.     DESE is required by law to perform periodic evaluations of local public school districts to ensure compliance with applicable legal requirements. Such reviews are referred to as "Compliance Program Reviews" ("CPR").

35.     CPR reviews include interviews of administrative staff, teaching and support services staff, school committee members, Parent Advisory Council ("PAC") representatives, school council representatives, and members of the general public. DESE also reviews selected student records and observes classroom instruction.

36. In 1996, 2000, 2007, and 2013, DESE issued CPR reports on the HPS detailing systemic failures to comply with regulations protecting students with disabilities and language barriers and their LEP Parents, including failures to translate important documents such as progress reports, notices, IEPs and assessment summaries. In each case, DESE required HPS to develop a so-called Corrective Action Plan ("CAP").

37. After each such review, DESE found that the steps set out in the previous CAP were not accomplished and that the HPS remained out of compliance with legal obligations owed to LEP Parents under Title VI, EEOA, ESEA, IDEA and their state law counterparts, citing the same or similar violations as in the prior report.

38. For example, the 2013 CAP required, among other things, that HPS revise and/or establish procedures to provide LEP Parents adequate oral interpretation and translation of educational documents, including a system to monitor compliance, training, and record management, all to be implemented no later than March 20, 2014. HPS, however, failed to meet the March 20, 2014 deadline set by DESE, and subsequent progress reports show that HPS is still not meeting these requirements.

39. In January 2015, DESE returned to HPS for yet another inspection. DESE staff spent more than thirty hours interviewing and conducting focus groups with approximately 250 stakeholders, including 37 elementary school teachers, 28 middle school teachers, 52 high school teachers, and 50 parents.

40. The 2015 District Review Report, consistent with prior reports, details ongoing violations of the rights of students with disabilities, ELLs, former ELLs, and their Parents.

41. On or about April 28, 2015, Defendant Board voted to place HPS into state receivership. DESE appointed Receiver Zrike pursuant to Mass. Gen. Laws ch. 69, § 1K on June 1, 2015.

42. On or around October 1, 2015, Receiver Zrike and former Commissioner Chester published the HPS Level 5 District Turnaround Plan (the "Turnaround Plan"), which was purportedly designed to address systemic challenges, especially with regard to educating students with disabilities and ELLs.

43. In the fall of 2015, Receiver Zrike hired Urban Special Education Leadership Collaborative ("Urban Collaborative") to conduct a comprehensive review of programs and services offered by HPS to students with disabilities and to assist with preparation of yet another improvement plan.

44. In May 2016, Urban Collaborative issued a 153-page report documenting its findings. Citing a persistent failure to provide adequate interpretation and translation services for Parents, the report, at page 113, called for immediate steps "to ensure a system is in place to provide translating services for non-English speaking parents of children involved in the evaluation and IEP process."

45. Notwithstanding the deadline set in the 2013 CAP, the adoption of the 2015 Turnaround Plan, the hiring of Urban Collaborative, and the appointment of Receiver Zrike, HPS has still failed to implement procedures for translating important education documents, to documenting all oral communications consistently, or to train all principals, administrative support staff, district translators, and other staff members identified as responsible for translations.

46.     Defendants Receiver Zrike, Ms. Currier, Ms. Smith, Mr. Brown, Mr. Peterson, Mr. Swygert, Ms. Vargas, Ms. Hourihan, Ms. Ewick, Ms. Burke, Ms. Lingsch, Ms. Salvador, Mr. Breish, and Ms. Glasheen, have failed, and continue to fail, to implement translation and interpretation policies ensuring that LEP Parents can comprehend important educational communications.

47.     DESE's failure to supervise and monitor HPS to assure that educational communications are in a language Parents can understand is consistent with how it discharges its obligations throughout the Commonwealth.

48.     Specifically, through its CPR process, DESE identified one hundred thirteen schools and school districts in Massachusetts as failing to properly provide translated educational documents and/or oral interpretation to LEP parents.[6] Nonetheless, DESE has

---

[6] DESE's most recent "Coordinated Program Review" reports found violations of legal requirements to provide translated documents and/or oral interpretation to LEP parents at the following schools: Academy of the Pacific Rim Charter School, Andover Public Schools, Arlington Public Schools, Assabet Valley Regional Technical High School, Athol-Royalston Regional School District, Ayer Shirley School District, Barnstable Public Schools, Boston Green Academy Horace Mann Charter School, Boston Preparatory Charter Public School, Boxford Public School District, Brockton Public Schools, Brookline Public Schools, Burlington Public Schools, Cambridge Public Schools, Central Berkshire Regional School District, Christa McAuliffe Charter Public School, City on a Hill Charter School, Clinton Public Schools, Codman Academy Charter Public School, Collegiate Charter School of Lowell, Community Charter School of Cambridge, Conservatory Lab Charter School, Douglas Public Schools, Dracut Public Schools, Edward M. Kennedy Academy for Health Careers, Essex Agricultural and Technical High School, Fitchburg Public Schools, Framingham Public Schools, Franklin County Regional Vocational Technical School District, Grafton Public Schools, Greater Fall River Regional Vocational Technical School, Hampshire Regional School District, Hanover Public Schools, Helen Y. Davis Leadership Academy Charter School, Hill View Montessori Charter School, Holbrook Public Schools, Hopedale Public Schools, Hudson Public Schools, King Philip Regional School District, KIPP Academy Lynn Charter School, Lawrence Public Schools, Lenox Public Schools, Leominster Public Schools, Lincoln-Sudbury Regional High School, Longmeadow Public Schools, Lowell Public Schools, Lunenburg Public Schools, Lynn Public Schools, Martin Luther King Jr. Charter School of Excellence, Match Charter Public School a/k/a Media and Technology Charter School, Maynard Public Schools, Medford Public Schools, Melrose Public Schools, Middleborough Public Schools, Middleton Public Schools, Millbury Public Schools, Milton Public Schools, Minuteman Regional Vocational Technical High School, Montachusett Regional Vocational Technical School, Mystic Valley Regional Charter School, Natick Public Schools, New Bedford Public Schools, New Liberty Charter School of Salem, Newton Public Schools, North Andover Public Schools, North Shore Regional Vocational Technical High School, Northampton-Smith Vocational Agricultural School, Northborough Public Schools, Northbridge Public Schools, Northeast Metropolitan Regional Vocational School, Oxford Public Schools, Peabody Public Schools, Phoenix Charter Academy, Pittsfield Public Schools, Plainville Public Schools, Prospect Hill Academy Charter School, Reading Public Schools, River Valley Charter School, Rockport Public Schools, Roxbury Preparatory Charter School, Sabis International Charter School, Saugus Public Schools, Sharon Public Schools, Shawsheen Valley Technical High School, Shrewsbury Public Schools, Sizer School: A North Central Charter

failed effectively to enforce its mandates that schools provide adequate translation and interpretation services to LEP Parents, choosing instead to issue report after report documenting noncompliance.

49. HPS's consistent failure to provide required translation and interpretation services for LEP Parents and DESE's persistent failure to hold HPS accountable amount to a policy or custom of deliberate indifference and reckless disregard of the constitutional and statutory rights of LEP Parents in Holyoke thereby harming both Parents and their children.

50. As a direct and foreseeable consequence of the Defendants' wrongful acts and omissions, members of PLESH and other LEP Parents with children in the HPS are denied access to important documents concerning the education of their children in a language they can understand. They are also effectively excluded from participation in important meetings which determine their children's educational programs thereby harming both Parents and their children.

## **CLAIMS FOR RELIEF**

51. Based on the foregoing allegations, Plaintiff asserts that Defendants, by denying them educational documents and communications in a language they can understand, violated their rights, and the rights of their children:

---

Essential School, South Hadley public Schools, Southbridge Public Schools, Southeastern Regional Vocational Technical School, Spencer-East Brookfield Public Schools, Spirit of Knowledge Charter School, Springfield Public Schools, Stoneham Public Schools, Stoughton Public Schools, Sunderland Public Schools, Sutton Public Schools, Swampscott Public Schools, Taunton Public Schools, Topsfield Public Schools, Tri-County Regional Vocational Technical School, Tyngsborough Public Schools, UP Academy Charter School of Boston, Wakefield Public Schools, Waltham Public Schools, Watertown Public Schools, Webster Public Schools, Westborough Public Schools, Westhampton Public Schools, Weymouth Public Schools, Winchester Public Schools, Winthrop Public Schools, Woburn Public Schools, and Worcester Public Schools.

a. Under the Equal Education Opportunity Act, 20 U.S.C. § 1703, to assist in the development and implementation of educational programming for their children so that they may participate equally in educational opportunities offered by HPS;

a. Under 42 U.S.C. § 2000d ("Title VI") and 34 C.F.R. § 100.5 to be free from discrimination manifest in deliberate indifference to their entitlement to participate in educational decision making regarding their children, or to be otherwise denied benefits of a program receiving federal financial assistance, on the basis of national origin;

b. Under the Fourteenth Amendment, as secured by 42 U.S.C. § 1983, to direct and participate in their children's education.

## PRAYER FOR RELIEF and JURY DEMAND

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Provide a trial by jury on all issues so triable;

B. Enter a declaratory judgment that Defendants' conduct as described above violates Plaintiff's rights under the EEOA, Title VI, and the Fourteenth Amendment in the manner set forth herein;

C. Enter preliminary and permanent injunctions compelling Defendants' to provide written translation of all documents and oral interpretation of all communications with HPS personnel to all LEP Parents so that they can participate in their children's education to the same extent as English-speaking Parents;

D. Retain jurisdiction in this matter for a reasonable period of time to permit monitoring of compliance with the permanent injunction;

E. Award reasonable attorneys' fees and costs as authorized by applicable statutes;

F.       Grant such other and further relief as the Court deems just and proper.

                                      Respectfully submitted,

/s/ Dianne R. Phillips
Dianne R. Phillips (BBO #552982)
Brett D. Carroll (BBO# 640569)
Benjamin M. Stern (BBO# 646778)
Jean-Phillip Brignol (BBO # 693775)
HOLLAND &KNIGHT LLP
10 St. James Avenue, 11th Floor
Boston, Massachusetts 02116
(617) 523-2700
dianne.phillips@hklaw.com
brett.carroll@hklaw.com
benjamin.stern@hklaw.com
jean-phillip.brignol@hklaw.com


Teresita Ramos (BBO #691017)
MASSACHUSETTS LAW REFORM
INSTITUTE, INC.
40 Court Street, Suite 800
Boston MA  02108
(617) 357-0700 ext. 350
tramos@mlri.org


Phillip Kassel (BBO# 555845)
Robert LeRoux Hernandez (BBO #231920)
MENTAL HEALTH LEGAL ADVISORS
COMMITTEE
24 School Street, Suite 804
Boston MA 02108
617.338.2345 ext #130
pkassel@mhlac.org
rhernandez@mhlac.org

*Attorneys for Padres Latinos de las Escuelas de Springfield y Holyoke (PLESH)*


Dated:  August 21, 2017
Boston, Massachusetts

## **VERIFICATION**

I, Glorimar Corsino, am the Founder and Chair of Padres Latinos de las Escuelas de Springfield y Holyoke (PLESH), the Plaintiff in this action. I have read the foregoing Verified Complaint. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the factual statements set forth in the foregoing Verified Complaint are true and correct based on my and PLESH members' knowledge, information and belief.

Executed on August 15, 2017

_____
Glorimar Corsino